```
                  UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF WEST VIRGINIA
                         AT CHARLESTON


CENTRAL WEST VIRGINIA REGIONAL
AIRPORT AUTHORITY, INC.,

          Plaintiff


v.                                  Civil Action No. 2:15-cv-11818

TRIAD ENGINEERING, INC.;
CAST & BAKER CORPORATION;
MICHAEL BAKER INTERNATIONAL, INC.;
WEST VIRGINIA PAVING, INC.;
SENEX EXPLOSIVES INC.;
AFFORDABLE ASPHALT MAINTENANCE
CORPORATION; ENGINEERED ARRESTING
SYSTEMS CORPORATION; ROYAL TEN
CATE (USA), INC.; NOVEL GEO-ENVIROMENTAL,
LLC; JMD COMPANY, INC.;
ARCHITECTS & ENGINEERS INSURANCE
COMPANY; ERIE INSURANCE GROUP; GREAT AMERICAN
INSURANCE COMPANY; HDI-GERLING AMERICA
INSURANCE COMPANY; LANCER INSURANCE COMPANY;
LIBERTY MUTUAL INSURANCE COMPANY;
OHIO FARMERS INSURANCE COMPANY;
WESTFIELD INSURANCE COMPANY; XL INSURANCE
AMERICA, INC.; NEW HAMPSHIRE
INSURANCE COMPANY; AIG AEROSPACE
INSURANCE SERVICES, INC.; CINCINNATI
INSURANCE COMPANY; TRAVELERS INDEMNITY
COMPANY; ACE AMERICAN INSURANCE COMPANY;
JOHN DOE INSURANCE COMPANY 1; JOHN DOE INSURANCE
COMPANY 2; JOHN DOE INSURANCE COMPANY 3;
JOHN DOE INSURANCE COMPANIES 4-20;
JOHN DOES NOS 1 THROUGH 20,

          Defendants
```

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is plaintiff's motion to remand, filed September 4, 2015.

<u>Background</u>

This action arises from a landslide at Yeager Airport in Charleston, West Virginia on March 12, 2015.  Pl. Am. Compl. ¶ 45; Not. of Removal ¶ 5.  Plaintiff, Central West Virginia Regional Airport Authority, Inc. ("the Authority"), is the owner and operator of Yeager Airport.

In 2003, the Authority "decided to provide a Runway Safety Area . . . for its runways," including Runway 5-23, which is the subject of this action.  Pl. Am. Compl. ¶ 33.  The new runway safety area involved two additions.  First, Runway 5-23 was to be extended by five hundred feet, and second, the Authority wished to add an engineered material arresting system ("arresting system").  <u>Id.</u> at ¶ 34.  The arresting system was "a series of 4,200 . . . blocks . . . designed to arrest an overrunning aircraft."  Resp. in Opp. to Pl. Mot. to Remand at *5; <u>see</u> <u>also</u> Pl. Am. Compl. ¶ 34.

2

Because Yeager Airport is situated "on top of a ridge," the Authority needed to "construct a . . . manmade slope" to make room for the extended runway and the arresting blocks.  Pl. Am. Compl. ¶ 35-36.  Creation of the manmade slope was an extensive project that "involved disturbing at least 42.5 acres of vegetated and forested land, including at least 13.75 acres of clear-cutting," and "the movement of approximately 750,000 cubic yards of earth."  Id. at ¶ 36.

On March 12, 2015, part of the manmade slope collapsed, "sending hundreds of thousands of cubic yards of fill and other material cascading down . . . onto the Keystone Drive area of Charleston destroying homes, a church, public roads and damming a stream."  Id. at ¶ 45; see also Resp. in Opp. to Pl. Mot. to Remand at *3.  The Authority asserts that the "damages suffered by the residents of Keystone Drive and the Authority total in the millions of dollars."  Pl. Am. Compl. ¶ 45.

The Authority filed this case in the Circuit Court of Kanawha County, West Virginia, on May 22, 2015.  Notice of Removal ¶ 1.  The Authority brought claims against a number of contractors that designed, built, or otherwise assisted with parts of the runway safety area and the manmade slope, and also

3

brought claims against the insurers of those contractors.  <u>See</u> Pl. Am. Compl. ¶ 2-27.  The Authority's complaint includes assertions of negligence, <u>id.</u> ¶¶ 49-55, 90-93, breaches of warranties, <u>id.</u> ¶¶ 56-59, 75-89, breach of contract, <u>id.</u> ¶¶ 60-64, breach of quasi-contract, <u>id.</u> ¶¶ 65-68, and products liability, <u>id.</u> ¶¶ 69-74.  The Authority also seeks declaratory judgments relating to the liability of various insurers, <u>id.</u> ¶¶ 94-109, as well as punitive damages, <u>id.</u> ¶¶ 110-15.

On August 5, 2015, defendant Engineered Arresting Systems Corporation, doing business as Zodiac Arresting Systems America ("Zodiac"), removed the action to this court, contending that "[f]ederal statutes and regulations in the field of airline and aviation safety . . . render th[e] case removable under the doctrine of complete preemption."  <u>Id.</u> ¶ 11.[1]  Plaintiffs have moved to remand the case, contending that complete preemption does not apply to this action.

---

[1] Defendants' briefing in opposition to remand also attempts to ground removal on 28 U.S.C. § 1442, the "federal officer" statute.  Because the "federal officer" theory was not present in the original notice of removal, and because the court has, by order filed today, denied defendants' motion to amend the notice of removal to add references to 28 U.S.C. § 1442, the arguments related to "federal officer" removal will not be considered in this opinion.

## Legal Standard

a. Motion to Remand

"Federal courts are courts of limited jurisdiction.
They possess only that power authorized by Constitution and
statute, which is not to be expanded by judicial decree."
Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377
(1994)(internal citations omitted).  Title 28 U.S.C. § 1441(a)
governs federal removal jurisdiction and provides as follows:

> [A]ny civil action brought in a State court of which
> the district courts of the United States have original
> jurisdiction, may be removed by the . . . defendants .
> . . to the district court of the United States for the
> district and division embracing the place where such
> action is pending. . . .

28 U.S.C. § 1441(a).

The burden of establishing removal falls upon the
removing party.  Mulcahey v. Colum. Organic Chem. Co., 29 F.3d
148, 151 (4th Cir. 1994).  Our court of appeals has observed
that it is obliged to construe removal jurisdiction strictly:

> We have noted our obligation "to construe removal
> jurisdiction strictly because of the 'significant
> federalism concerns' implicated" by it.  Maryland
> Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255,
> 260 (4th Cir. 2005) (quoting Mulcahey, 29 F.3d at
> 151). . . .  Consistent with these principles, we have
> recognized that state law complaints usually must stay
> in state court when they assert what appear to be

5

> state law claims.  <u>See</u>, <u>e.g.</u>, <u>Harless v. CSX Hotels,</u>
> <u>Inc.</u>, 389 F.3d 444, 450 (4th Cir. 2004); <u>King</u>, 337
> F.3d at 424; <u>Darcangelo v. Verizon Communications,</u>
> <u>Inc.</u>, 292 F.3d 181, 186 (4th Cir. 2002); <u>Cook v.</u>
> <u>Georgetown Steel Corp.</u>, 770 F.2d 1272, 1274 (4th Cir.
> 1985).

<u>Lontz v. Tharp</u>, 413 F.3d 435, 440 (4th Cir. 2005).  Congress has

intended that the federal courts "resolve all doubts about the

propriety of removal in favor of retained state court

jurisdiction." <u>Marshall v. Manville Sales, Corp.</u>, 6 F.3d 229,

232 (4th Cir. 1993).

    One source of federal jurisdiction is 28 U.S.C. §

1331, which provides that "[t]he district courts shall have

original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States."  The

well-pleaded complaint rule states that removal under this

provision is generally appropriate only "if the face of the

complaint raises a federal question." <u>Lontz</u>, 413 F.3d at 439.

Our court of appeals has elaborated on the well-pleaded

complaint rule:

> In determining whether a plaintiff's claim arises
> under federal law, we apply the well-pleaded complaint
> rule, which holds that courts "ordinarily . . . look
> no further than the plaintiff's [properly pleaded]
> complaint in determining whether a lawsuit raises
> issues of federal law capable of creating federal-
> question jurisdiction under 28 U.S.C. § 1331." <u>Custer</u>
> <u>v. Sweeney</u>, 89 F.3d 1156, 1165 (4th Cir. 1996).  Thus,
> in examining the complaint, our first step is to

6

"discern whether federal or state law creates the cause of action." Mulcahey, 29 F.3d at 151; see also Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) ("The vast majority of lawsuits 'arise under the law that creates the cause of action.' ") (quoting Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S. Ct. 585, 60 L. Ed. 987 (1916).). If federal law creates a plaintiff's claim, then removal is proper. Mulcahey, 29 F.3d at 151. The general rule, of course, is that a plaintiff is the "master of the claim," and he may "avoid federal jurisdiction by exclusive reliance on state law" in drafting his complaint. Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed.2d 318 (1987).

Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005).


        In this case, no federal cause of action appears on the face of the complaint, and to effect removal, defendants rely on the doctrine of complete preemption.  Complete preemption is "a narrow exception to the well-pleaded complaint rule."  Lontz, 413 F.3d at 439; see also Johnson v. American Towers, LLC, 781 F.3d 693, 701 (4th Cir. 2015)("[W]e note that complete preemption only applies in a 'very narrow' range of cases.")(citation omitted).


    b. Complete Preemption

        "Complete preemption," a "term of art," "refers to that small category of statutes that [. . .] authorize removal

of actions that sought relief only under state law." <u>Lontz</u>, 413
F.3d at 438.  Under the doctrine of complete preemption, removal
is appropriate "if the subject matter of a putative state law
claim has been totally subsumed by federal law – such that state
law cannot even treat on the subject matter."  <u>Id.</u> at 439-40.

Complete preemption applies only where Congress
creates an exclusive federal cause of action covering the
plaintiff's claim.  In <u>Beneficial Nat'l Bank v. Anderson</u>, for
example, the Supreme Court held that remedial provisions of the
National Bank Act created an exclusive cause of action for usury
claims against a national bank, thus completely preempting
state-law usury claims and allowing removal.  539 U.S. 1 (2003).
The Court framed the issue of complete preemption as follows:

> Does the National Bank Act provide the exclusive cause
> of action against national banks?  If so, then the
> cause of action necessarily arises under federal law
> and the case is removable.  If not, then the complaint
> does not arise under federal law and is not removable.

539 U.S. at 9; <u>see also</u> <u>Metropolitan Life Ins. Co. v. Taylor</u>,
481 U.S. 58, 63 (1987)(noting that Taylor's claim "falls
directly under § 502(a)(1)(B) of ERISA, which provides an
exclusive federal cause of action for resolution of such
disputes"); <u>Avco Corp. v. Aero Lodge No. 735</u>, 390 U.S. 557

(1968) (holding that Labor Management Relations Act created exclusive federal cause of action for the violation of agreements to arbitrate grievance disputes, thus completely preempting state lawsuits to enforce such agreements). Similarly, our court of appeals has "repeatedly recognized [that] the sine qua non of complete preemption is a pre-existing federal cause of action that can be brought in the district courts [. . . .] ." Johnson, 781 F.3d at 702 (internal quotations and citations omitted); see also Pinney, 402 F.3d at 449 ("To remove an action on the basis of complete preemption, a defendant must establish that the plaintiff has a 'discernible federal [claim]' and that 'Congress intended [the federal claim] to be the exclusive remedy for the alleged wrong.'")(quoting King v. Marriott Intern. Inc., 337 F.3d 421, 425 (4th Cir. 2003)(alterations in original)).

     The doctrine of complete preemption appears to be justified by the view that, in creating an exclusive cause of action, Congress intends to allow removal of competing state-law claims.  Admittedly, the Court's decisions have given conflicting statements as to whether complete preemption may be invoked because Congress intends for certain causes of actions to be removable, see Taylor, 481 U.S. at 66 (noting Congress's

9

"clear intention to make § 502(a)(1)(B) suits . . . federal questions for the purposes of federal court jurisdiction"), or whether Congress's creation of an exclusive cause of action in and of itself, rather than a specific intention to make a cause of action removable, is the doctrine's ultimate basis, see Beneficial Nat'l Bank, 539 U.S. at 10 n.5 ("[T]he proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable.").  A commentator notes, however, that the Court's apparent "shift in focus - from inquiring directly whether Congress intended to create removal jurisdiction to inquiring whether Congress intended to create an exclusive federal cause of action - is sensible only if the latter is a good proxy for the former."  Gil Seinfeld, The Puzzle of Complete Preemption, 155 U. Pa. L. Rev. 537, 556 (2006-2007).

        Moreover, suggestions that the doctrine is based in other policies — such as the desire to limit state-court errors — draw little support from the Court's majority opinions while attracting criticism from others.  See Beneficial Nat'l Bank, 539 U.S. at 20-21 (Scalia, J., dissenting)(noting that "it is up to Congress, not the federal courts, to decide when the risk of

10

state-court error with respect to a matter of federal law . . . [will] justify divesting the state courts of authority").

In sum, the most defensible view remains that removal is permitted when Congress creates exclusive causes of action because the Court believes that Congress, by creating an exclusive cause of action on some subject, shows its intention to allow removal of state-law claims on that subject.

Complete preemption applies only when the particular party who brought the lawsuit in state court is empowered to use Congress's exclusive remedy.  Franchise Tax Bd. v. Const. Laborers Vac. Trust, 463 U.S. 1, 24 (1983).  In Franchise Tax Bd., a trust regulated by the Employee Retirement Income Security Act ("ERISA") was not permitted to remove a lawsuit filed by California's state tax authority.  463 U.S. at 27.  The Court observed that Congress had created an enforcement provision within ERISA, § 502(a), and acknowledged that "[i]t may be that . . . any state action coming within the scope of § 502(a) of ERISA would be removable to federal district court, even if an otherwise adequate state cause of action were pleaded without reference to federal law."  Id. at 24.  But the Court found that "ERISA carefully enumerates the parties entitled to

11

seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for a declaratory judgment on the issues in this case." Id. at 27.  "A suit for similar relief by some other party," such as California's tax collecting authority, "does not 'arise under' that provision" and therefore could not be removed.  Id.  The Court made good on this distinction in Taylor, in which a beneficiary of an ERISA-regulated plan brought suit and the Court allowed defendants to remove the case under § 502.  481 U.S. 58.

c. Field and Complete Preemption Distinguished

        Defendants argue, repeatedly and emphatically, that this case is removable because federal legislation has preempted the field of aviation and airport safety, which includes the Authority's claims.[2]  That position, however, overlooks the

---

[2] See, e.g., Resp. in Opp. to Pl. Mot. to Remand at *2 ("The prevailing and better view among the courts is that the [Federal Aviation Act] preempts the entire field of aviation safety through implied field preemption.")(internal quotation marks and citation omitted); *8 ("Courts generally have concluded that the [Federal Aviation Act] and its implementing regulations promulgated by the FAA establish a comprehensive and exclusive regulatory framework governing aviation and airport safety in the United States. This prevailing view is based upon traditional principles of implied field preemption.")(internal citations omitted).

important distinction between complete preemption and field
preemption.

Federal courts recognize three distinct types of
preemption: conflict preemption, field preemption, and complete
preemption.[3]  See 15-103 Moore's Federal Practice - Civil §
103.45[2].  In the first, and likely most familiar, type of
preemption, "'conflict' preemption, the state cause of action is
superseded because it directly clashes with - and therefore
undermines - federal law."  Id.; see also California v. ARC Am.
Corp., 490 U.S. 93, 100-01 (1989)("[S]tate law is . . . pre-
empted to the extent it actually conflicts with federal law,
that is, when compliance with both state and federal law is
impossible, or when the state law stands as an obstacle to the
accomplishment and execution of the full purposes and objectives
of Congress.")(internal quotation marks and citations omitted).

As the Court noted in ARC Am. Corp., impossibility of
compliance with both state and federal law is unnecessary for
"conflict" preemption to apply.  In some settings, of course,

_____

[3] These three categories relate to the preemptive effect of a
statute.  Courts also distinguish between express and implied
preemption, but that distinction relates only to the manner in
which Congress effected preemption (whether implicit or
explicit) and not to the scope of the preemption.

13

the Court has invalidated state laws where complying with both state and federal requirements is actually impossible.  See, e.g., Mut. Pharm. Co. v. Bartlett, 133 S. Ct. 2466, 2473 (2013) (noting that "it has long been settled that state laws that conflict with federal law are without effect," and "it was impossible for Mutual to comply with both its state-law duty to strengthen the warnings on sulindac's label and its federal-law duty not to alter sulindac's label.  Accordingly, the state law is pre-empted.")(internal quotation marks and citations omitted).

The second type of preemption, "'field' preemption," applies when "Congress . . . intended 'to foreclose any state regulation in [an] area,' irrespective of whether state law is consistent or inconsistent with 'federal standards.'"  Oneok, Inc. v. Learjet, Inc., 135 S.Ct. 1591, 1595 (2015)(quoting Arizona v. United States, 132 S.Ct. 2492, 2502 (2012))(emphasis in original).  In Arizona v. United States, for example, the Court held that several provisions of Arizona's state laws governing illegal aliens were preempted by federal law because "the Federal Government has occupied the field of alien registration."  132 S.Ct. at 2502.  In Oneok, the Court denied defendants' motion for summary judgment, which relied on the

14

doctrine of field preemption, because Congress had not preempted the field of natural gas regulation so thoroughly as to displace state antitrust laws.  135 S.Ct. 1591.  Thus, the <u>Oneok</u> Court made clear that, notwithstanding the inapplicability of field preemption, the doctrine of "conflict pre-emption" may well still have application, and "should prove sufficient to address" any conflicts between state and federal law.  <u>Id.</u> at 1602.

Both field preemption and conflict preemption supply defenses to state-law claims.  <u>See</u> 15-103 Moore's Federal Practice - Civil § 103.45[2] ("'Avoidance' means that the defendant is relying on federal law to defeat — or 'avoid' — the state claim.  The goal is dismissal. . . . A state court defendant may rely on either conflict or field preemption for avoidance purposes if a state cause of action aids plaintiffs in a manner not contemplated by federal law.").  A successful showing of conflict or field preemption, in either a state or federal court, generally results in the dismissal of a state-law claim.  In certain circumstances, preemption may also be used as a "defense" in advance, to halt the operation of state law before it is enforced.  <u>See</u>, <u>e.g.</u>, <u>Arizona v. United States</u>, 132 S.Ct. 2492 (enjoining operation of state immigration law where relevant field was preempted).

15

Rather than eliminating liability under state law, the third type of preemption, "complete preemption," "transforms state causes of action into claims under [a] federal statute." 15-103 Moore's Federal Practice - Civil § 103.45[2]. "It in no way avoids or defeats plaintiff's suit; the goal is to establish federal jurisdiction." Id. In essence, a litigant who removes under the theory of complete preemption is arguing that

> federal law is so pervasive in its reach that, even
> though the plaintiff has characterized the suit as
> state-based, it must be deemed federal in nature,
> [and] the defendant is merely attempting to
> recharacterize plaintiff's claim as federal, rather
> than state. Put another way, in complete preemption
> cases, federal law so transforms the substantive area
> that any complaint alleging facts that come within the
> statute's scope necessarily "arises under" federal
> law, even if the plaintiff pleads a state law claim
> only.

Id. Complete preemption's transformation of a state cause of action into a federal one, and its empowerment of litigants to remove, distinguish it from field and conflict preemption. The Supreme Court has clarified, repeatedly, that the "defensive" theories – conflict and field preemption – may not serve as bases for removal. See, e.g., Beneficial Nat'l Bank, 539 U.S. at 13 ("[A] case may not be removed to federal court on the basis of [. . .] the defense of pre-emption [. . . .]")(quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 393

16

(1987))(alterations and emphasis in original); <u>Franchise Tax Bd.</u>, 463 U.S. at 14 ("[S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption . . . .").

Beyond serving a different purpose from field and conflict preemption, invocation of complete preemption also demands a different justification in legislative materials.  As discussed above, complete preemption applies only where Congress creates an exclusive federal cause of action.  See, e.g., <u>Beneficial Nat'l Bank</u>, 539 U.S. at 9 ("Does the National Bank Act provide the exclusive cause of action against national banks? If so, then the cause of action necessarily arises under federal law and the case is removable."); <u>Taylor</u>, 481 U.S. at 63 (noting that Taylor's claim "falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes").  This analysis differs markedly from the test for field preemption, which asks whether "Congress . . . intended to foreclose any state regulation" in a particular area.  <u>Oneok, Inc. v. Learjet, Inc.</u>, 135 S.Ct. at 1595.  Congress plainly can foreclose state regulation in an area without creating an exclusive federal cause of action in that area.  See, e.g., <u>Kurns v. R.R. Friction Prods. Corp.</u>, 132

17

S.Ct. 1261 (2012).  The complete preemption analysis also
differs fundamentally from the conflict preemption question of
whether state law "actually conflicts with federal law . . . or
. . . stands as an obstacle to the accomplishment and execution
of the full purposes and objectives of Congress," <u>ARC Am. Corp.</u>,
490 U.S. at 100-01, neither of which requires a federal cause of
action.

     A final distinction between complete and field
preemption deserves mention.  Because complete preemption may be
invoked only where an exclusive federal cause of action governs
a lawsuit, its applicability also depends on the particular
person suing rather than just the area of law in question.  In
this way, it differs greatly from field preemption.  Thus, for
example, the Court's holding in <u>Arizona</u> - that the field of
immigration law is preempted by Congress – provides a defense
that anyone may use in response to enforcement of a state
immigration statute.  132 S.Ct. 2492.  But the holding in <u>Taylor</u>
- providing that ERISA completely preempts certain types of
state-law claims governing insurance benefits – is useful only
to the persons allowed to sue under ERISA's cause of action.
481 U.S. 58; see also <u>Franchise Tax Bd.</u>, 463 U.S. 1, 24, 27
(rejecting complete preemption of suit brought by party not

18

enumerated in ERISA's cause of action).

Commentators suggest that "[t]he lower federal courts have had difficulty understanding and applying the Supreme Court's distinction between complete preemption and other preemption defenses that do not provide for federal jurisdiction under the well-pleaded complaint rule." 15-103 Moore's Federal Practice - Civil § 103.45[3]. Some courts have also noted widespread confusion about the distinction between field and complete preemption, while also recognizing the distinct features of each of the doctrines. See Retail Property Trust v. United Broth. of Carpenters and Joiners of Am., 768 F.3d 938, 948-49 (9th Cir. 2014)("We have occasionally — and always casually — equated complete preemption with field preemption. . . . But it is also clear that field preemption and complete preemption are not co-extensive. For now, it is enough to say that the doctrines serve distinct purposes and should be kept clear and separate in our minds.")

Review of the Supreme Court's recent opinion in Kurns v. R.R. Friction Prods. Corp., 132 S.Ct. 1261, will help clarify the distinctions between the two doctrines. In Kurns, a deceased railroad worker's estate sued makers and distributors

19

of locomotive products, contending that the products contained asbestos, and that plaintiff had been exposed to the asbestos and injured by it.  Id. at 1264.  His complaint alleged state-law claims of design defects and failure to warn.  Id. Defendants argued that the plaintiff's state-law claims had been preempted by the Locomotive Inspection Act, 49 U.S.C. § 20701 et seq., and the district court granted summary judgment to defendants on that basis.  Id. at 1264-65.  The court of appeals affirmed, and the Supreme Court granted certiorari to decide whether the grant of summary judgment was appropriate based on the preemption defense.  Id.

          The Court determined that the Locomotive Inspection Act preempted plaintiff's state-law claims.  In so deciding, the Court relied on "so-called field preemption," which turns on the question of whether "the scope of a [federal] statute indicates that Congress intended federal law to occupy a field exclusively."  132 S. Ct. at 1266 (internal quotations and citation omitted)(alteration in original).  Largely relying on its previous holding in Napier v. Atlantic Coast Line R. Co., 272 U.S. 605 (1926), the Court found that the Locomotive Inspection Act indeed "'manifest[s] the intention to occupy the entire field of regulating locomotive equipment[.]'"  Kurns, 132

S. Ct. at 1266 (quoting <u>Napier</u>, 272 U.S. at 611)(alterations in original).  Key to this holding in <u>Napier</u>, and to the Court's reiteration of it in <u>Kurns</u>, was Congress's broad grant of power to the Interstate Commerce Commission in the Locomotive Inspection Act, which "extends to the design, the construction and the material of every part of the locomotive and tender and of all appurtenances."  <u>Kurns</u>, 132 S. Ct. at 1266 (quoting <u>Napier</u>, 272 U.S. at 611).

Several features of <u>Kurns</u> distinguish it from complete preemption cases.  First, it did not consider the Court's jurisdiction — as would have been the subject of a complete preemption analysis - but instead whether summary judgment had been appropriate.  Second, the Court did not suggest that the Locomotive Inspection Act created an exclusive federal cause of action (or, for that matter, any federal cause of action), whereas one would have been required for a complete preemption claim.  Instead, the Court simply asked whether "Congress intended federal law to occupy a field exclusively."  132 S. Ct. at 1266.  And, because no federal cause of action demanded analysis, the Court did not consider whether plaintiff was permitted to sue under it.  <u>See</u> <u>Franchise Tax Bd.</u>, 463 U.S. at 24, 27.  These distinctions should appear each time a court

considers field, rather than complete, preemption.

### Application of the Complete Preemption Standard

In both its Notice of Removal and the briefing on the Motion to Remand, Zodiac argues that this action is removable because federal statutes have completely preempted state laws regarding aviation safety.[4]  As explained above, Zodiac must point to an exclusive federal cause of action that covers the present type of dispute in order to remove the case under the doctrine of complete preemption.

### a. The Federal Aviation Act

Zodiac suggests that remedial provisions in either 49 U.S.C. § 46108 or 49 U.S.C. § 46101-07 completely preempt plaintiff's state-law claims.  Both of the proffered causes of

---

[4] See Not. of Removal ¶ 4 ("Removal of this case is proper pursuant to 28 U.S.C. §§ 1441 and 1331 ('federal question') because it presents a federal question under the [Federal Aviation Act] and/or the [Airline Deregulation Act] based on the doctrine of complete preemption."); Resp. in Opp. to Pl. Mot to Remand at *7 ("This court has removal jurisdiction because claims within the preempted field of aviation safety, which has been held to include Runway Safety Area projects, present a federal question."); id. at *7-8 (citing Town of Stratford v. City of Bridgeport, No. 3:10-CV-394, 2010 U.S. Dist. LEXIS 65975 (D. Conn. 2010), for proposition that claims are completely preempted).

action fall within the Federal Aviation Act, which is codified at Title 49, Subtitle VII, Part A of the U.S. Code ("Part A" or "the Act").[5]

The court notes that Zodiac faces an uphill battle in arguing that the Act provides a private right of action allowing complete preemption in this case.  See John C. Nettels, Jr. and Jerrick L. Irby, Standard of Care Preemption in Aviation Litigation: Halting Steps to a Coherent Analysis, 76 J. Air L. & Com. 327, 345 (2011)(discussing complete preemption and preemption under Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005), and stating that "[b]oth of these [theories] have been asserted in aviation safety litigation but with limited success").  Federal courts have noted that the

---

[5] The Federal Aviation Act and the Airline Deregulation Act were enacted in 1958 and 1978, respectively, but these laws are no longer operative in their original forms.  Public Law 103-272, enacted in 1994, recodified Title 49 of the U.S. Code, which governs transportation, and, in doing so, largely repealed both the Federal Aviation Act and the Airline Deregulation Act.  See To revise, codify, and enact without substantive change certain general and permanent laws, related to transportation, as subtitles II, III, and V-X of title 49, United States Code, "Transportation", and to make other technical improvements in the Code, Pub. L. 103-272, 108 Stat. 745 (1994).  The changes in the 1994 recodification, however, "were stylistic and 'not intend[ed] to impair the applicability of prior judicial case law interpreting these provisions.'"  DiFiore v. Am. Airlines, Inc., 646 F.3d 81, 85 (1st Cir. 2011)(quoting H.R. Rep. No. 103-677, at 83 (1994) (Conf. Rep.))(alteration in original).

Federal Aviation Act generally lays out a system of public, not private, enforcement.  See Bonano v. East Carribean Airline Corp., 365 F.3d 81, 85 (1st Cir. 2004)(discussing generally the Act's remedial structure).  Commentators have also observed that "[t]he majority of the cases under the safety provisions of the Act have held that a private action was neither intended nor envisioned by Congress as a means of enforcement of these provisions."  James D. Crawford and Deena Jo. Schneider, The Implied Private Cause of Action and the Federal Aviation Act: A Practical Application of Cort v. Ash, 23 Villanova L. Rev. 657, 668 (1977-1978)(collecting cases).

Moreover, in the late 1960s, "Congress considered and rejected a bill which would have created a federal cause of action and exclusive federal jurisdiction for injuries arising out of aircraft crashes."  Obenshain v. Halliday, 504 F. Supp. 946, 950 (E.D. Va. 1980)(citing Aircraft Crash Litigation Hearings before Subcommittee on Improvements in Judicial Machinery on S. 961, 91st Congress, First Session (1969); Aircraft Crash Litigation Hearings before Subcommittee on Improvements in Judicial Machinery on S. 3305 and S. 3306, 90th Congress, Second Session (1968)); see also Crawford and Schneider, The Implied Private Cause of Action and the Federal

24

<u>Aviation Act</u>, 23 Villanova L. Rev. at 668 ("Congress considered – but did not pass – a bill to provide for a federal cause of action for injuries arising out of aircraft disasters.") (citation omitted).  Because Congress made a clear choice not to include a broad provision allowing suit in the federal system, the court is inclined to read the Act's existing remedial provisions narrowly.

###### b. <u>Zodiac's Proposed Exclusive Federal Causes of Action</u>

The first provision of the Federal Aviation Act that Zodiac believes will ground complete preemption is codified at 49 U.S.C. § 46108, which reads as follows:

> § 46108. Enforcement of certificate requirements by interested persons
>
> An interested person may bring a civil action in a district court of the United States against a person to enforce section 41101(a)(1) of this title. The action may be brought in the judicial district in which the defendant does business or the violation occurred.

49 U.S.C. § 46108.  This section thus provides a private right of action, within the federal district courts, to enforce § 41101(a)(1).  Section 41101(a)(1) reads as follows:

> § 41101. Requirement for a certificate

25

    (a) General. — Except as provided in this chapter or another law —

        (1) an air carrier may provide air transportation only if the air carrier holds a certificate issued under this chapter authorizing the air transportation;

49 U.S.C. § 41101(a)(1).  Section 41101(a)(1) requires that an "air carrier hold[] a certificate issued under this chapter" in order to "provide air transportation."  Section 46108, the provision invoked by Zodiac, thus allows "an interested person" to "bring a civil action" to enforce the requirement that air carriers hold certificates issued under the Act if they are to "provide air transportation."  49 U.S.C. §§ 46108, 41101(a)(1).

    Federal courts have found that section 46108 is a "narrow exception," indeed "isthmian in its scope," to the Act's lack of private rights of action, and that it "is aimed at conflicts between carriers."  <u>Bonano</u>, 365 F.3d at 85.  Courts have allowed parties to use § 46108 and its statutory predecessors for the narrow purpose of enforcing certification requirements against carriers who either operate without certifications or exceed the scope of their certifications. <u>See</u> <u>World Airways, Inc. v. Northeast Airlines, Inc.</u>, 349 F.2d 1007 (1st Cir. 1965) (allowing suit against airline and travel agency for exceeding the scope of activity allowed in a

26

government-issued certificate).  By contrast, courts have rejected attempts to invoke section 46108 where the action complained of is not directly related to those issues.  See, e.g., Schmeling v. NORDAM, 97 F.3d 1336, 1344 (10th Cir. 1996)("Schmeling interprets § 46108 as allowing enforcement of all FAA regulations by an 'interested person,' but the statute clearly limits such actions to those enforcing § 41101(a)(1), which requires air carriers to hold FAA certificates."); Weiss v. El Al Airlines, Ltd., 433 F.Supp.2d 361, 370 n.11 (S.D.N.Y. 2006)(declaring § 46108 irrelevant where passengers brought suit against an airline after they were "bumped" from a flight) ; TWU Local 555 v. Sw. Airlines Co., No. CIV.A. 3:02-CV-0554P, 2002 WL 31245372 (N.D. Tex. Oct. 1, 2002)(finding that § 46108 is not relevant in case where employees sued airline based on discipline suffered because of past criminal records).

     The present case is far remote from the disputes over certification contemplated by § 46108.  To repeat, § 46108 may be employed to enforce the requirement that "an air carrier" "hold[] a certificate" issued under the Act if it is to "provide air transportation."  It is true that the terms "air carrier" and "air transportation" apply more broadly than one might guess.  See, e.g., United States v. City of Montgomery, 201

27

F.Supp. 590, 593 (M.D.Al 1962)(finding the term "air carrier" to include municipality that runs an airport and companies operating restaurants at an airport); City of Philadelphia v. C. A. B., 289 F.2d 770, 774 (D.C. Cir. 1961)(holding that trucking portion of shipping route constitutes "air transportation" when another part of the route is completed by air).  But the Authority has not argued that any defendant should be liable because it failed to hold a government-issued certificate or exceeded the actions allowed by its certificate.  Simply put, plaintiff's claims allege construction defects, not a lack of certification.  See Pl. Compl. ¶ 49-115.  Because claims regarding a lack of certificate, or actions in excess of a certificate, are the only claims that may ground an action under § 46108, the Authority's complaint cannot fall under that provision.

It may be true, as Zodiac asserts, that "the FAA's [runway safety area] and [arresting system] design specifications are components of the Authority's FAA certification."  Resp. in Opp. to Pl. Mot. to Remand at *12. But the Authority is not the defendant in this case – it is the plaintiff.  The Authority's certification status thus cannot bring the case within the ambit of § 46108, because no party is

28

attempting "to enforce section 41101(a)(1)" against the Authority.  And the Authority has not pressed any claim against the defendants alleging that they failed to gain certification or exceeded the scope of their certificates.  In sum, § 46108 may not ground removal of this case under the doctrine of complete preemption.

Zodiac also suggests, in the alternative, that 49 U.S.C. §§ 46101-07 may provide the exclusive federal cause of action required for complete preemption.  Sections 46101-07 outline an administrative procedure that may be invoked if an individual discovers a violation of the Act.  Section 46101(a) explains the nature of the procedure:

§ 46101. Complaints and investigations

(a)  General.—

(1) A person may file a complaint in writing with the Secretary of Transportation (or the Under Secretary of Transportation for Security with respect to security duties and powers designated to be carried out by the Under Secretary or the Administrator of the Federal Aviation Administration with respect to aviation safety duties and powers designated to be carried out by the Administrator) about a person violating this part or a requirement prescribed under this part. Except as provided in subsection (b) of this section, the Secretary, Under Secretary, or Administrator shall investigate the complaint if a reasonable ground appears to the Secretary,

29

Under Secretary, or Administrator for the
investigation.

(2) On the initiative of the Secretary, Under
Secretary, or Administrator, as appropriate, the
Secretary, Under Secretary, or Administrator may
conduct an investigation, if a reasonable ground
appears to the Secretary, Under Secretary, or
Administrator for the investigation, about--

(A)   a person violating this part or a
      requirement prescribed under this part; or

(B)   any question that may arise under this part.

(3) The Secretary of Transportation, Under
Secretary, or Administrator may dismiss a
complaint without a hearing when the Secretary,
Under Secretary, or Administrator is of the
opinion that the complaint does not state facts
that warrant an investigation or action.

(4) After notice and an opportunity for a hearing
and subject to section 40105(b) of this title,
the Secretary of Transportation, Under Secretary,
or Administrator shall issue an order to compel
compliance with this part if the Secretary, Under
Secretary, or Administrator finds in an
investigation under this subsection that a person
is violating this part.

49 U.S.C. § 46101(a).  The statute, in other words, allows for

persons to "file a complaint" with the Secretary of

Transportation, the Under Secretary of Transportation, or the

Administrator of the Federal Aviation Administration ("FAA") if

someone is violating the Act.  49 U.S.C. § 46101(a)(1).  The

official to whom the complaint is made may dismiss it, if it

"does not state facts that warrant an investigation or action,"

30

or investigate the complaint if there is a "reasonable ground" for doing so.  49 U.S.C. §§ 46101(a)(2), (3).  If the investigation uncovers a violation of the Act, the official may "issue an order to compel compliance" with the Act. 49 U.S.C. § 46101(a)(4).

Sections 46102 through 46107, the others that Zodiac mentions, specify additional components of this complaint procedure or relate to the more general process by which regulations or orders under the Act may be enforced.  In particular, the provisions describe the procedures that must be used during the administrative process, including requirements for appearances at hearings, see 49 U.S.C. § 46102, requirements for service of process, see 49 U.S.C. § 46103, and evidentiary and discovery rules, see 49 U.S.C. § 46104.  They also give general rules for when orders and regulations take effect, see 49 U.S.C. § 46105, state that the Secretary of Transportation, the Under Secretary of Transportation, or the Administrator of the FAA may bring civil actions in the district courts to enforce orders and regulations, see 49 U.S.C. § 46106, and state that the Attorney General may bring civil suits in the district courts to enforce certain portions of the Act as well as particular orders and regulations promulgated thereunder, see 49

31

U.S.C. § 46107.

This scheme fails to establish the cause of action required for complete preemption.  The main problem is that it does not give a plaintiff such as the Authority, which is not one of the enumerated federal officials, the right to bring suit.  As explained above, the Supreme Court's opinion in Franchise Tax Bd. rebuffed a complete preemption argument in nearly-identical circumstances, where the party filing the suit was not among those Congress had permitted to use a particular cause of action.  463 U.S. at 27.  The Court held that, although § 502(a) of ERISA could possibly provide an exclusive cause of action in some cases, "ERISA carefully enumerates the parties" permitted to use § 502(a), and the party that had sued was not among those enumerated.  Id. at 27.  The Authority is in the same position in this case: it is not among the officials permitted by §§ 46101-07 to file a district-court action.  Those statutory provisions thus may not ground a theory of complete preemption.

The possibility that the Authority might take advantage of the administrative process described in the statute does not help matters, because complete preemption requires a

32

cause of action that may be brought in the district courts.  As our court of appeals explained in Johnson, "the sine qua non of complete preemption is a pre-existing federal cause of action that can be brought in the district courts [. . . .]" 781 F.3d at 702 (quoting In re Blackwater Sec. Consulting LLC, 460 F.3d at 441)(emphasis added).  A district court remedy is required because "[c]omplete preemption applies only when 'Congress has clearly manifested an intent to make causes of action [. . .] removable to federal court.'"  Id. (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987)).  Where Congress does not allow a particular type of litigant to bring suit in the courts, there is no basis for divining Congressional intention to allow such a litigant to remove.

The Act's administrative scheme does not allow private parties to file actions in any court.  Instead, parties must "file a complaint" with the Secretary of Transportation, the Under Secretary of Transportation, or the Administrator of the FAA.  49 U.S.C. § 46101(a)(1).  The official who investigates the complaint may, if circumstances so warrant, issue an order, and that order may be enforced by a district court.  49 U.S.C. § 46106.  Certain officials, such as the Attorney General, may also file actions in the district courts independently of the

33

remedial scheme, see § 46107(b)(A), but the Authority may not avail itself of the Attorney General's powers.  The scheme does not allow private parties to bring any actions directly, and so, by extension, it does not allow them to bring actions "in the district courts," <u>Johnson</u>, 781 F.3d at 702.  The administrative scheme thus lacks the "sine qua non" of complete preemption. <u>Id.</u>

Moreover, the Authority's claims do not allege violations of the Federal Aviation Act or regulations promulgated thereunder, so they could not even be raised under §§ 46101-07.  As § 46101 states, "A person may file a complaint in writing . . . about a person violating this part or a requirement prescribed under this part."  The term "part" in § 46101 refers to Part A of Subtitle VII of Title 49 of the U.S. Code, which is the Part of Subtitle VII that includes all rules on "Air Commerce and Safety."  The Authority, however, has not alleged that defendants have violated any part of the federal rules on air commerce and safety, or any other federal administrative directives regarding aviation.  All of the Authority's claims are state-law causes of action.  The scheme described in §§ 46101-07 thus does not cover this case.

c. <u>The Act's Provisions Concerning Preemptive Scope</u>

Two provisions in Part A, § 40120(c) and § 41713, refer directly to the preemptive scope of federal aviation law. To the extent they apply to this case, they bolster the court's conclusion that the complete preemption theory fails.

First, the Federal Aviation Act includes a "saving clause" preserving legal claims found outside its own provisions, thus suggesting that Congress did not intend for it to create exclusive causes of action.  The Act's provision regarding its "[r]elationship to other laws," 49 U.S.C. § 40120(c), states that "A remedy under this part is in addition to any other remedies provided by law."  The term "part" in § 40120(c) refers to all of Part A, which encompasses the federal rules on "Air Commerce and Safety."  Part A includes both § 46108 and §§ 46101-07, the two provisions relied on by Zodiac. In other words, Congress explicitly legislated that the two provisions Zodiac mentions in this case provide remedies "in addition to any other remedies provided by law."

Federal courts have repeatedly used § 40120(c) in determining the preemptive scope of the Act.  In many cases, the saving clause has played a key role in the determination that

35

part or all of a state law is not preempted by the Act.  <u>See</u>,
<u>e.g.</u>, <u>Abdullah v. American Airlines, Inc.</u>, 181 F.3d 363, 365
(3d. Cir. 1999)(noting that, although "federal law preempt[s]
the <u>standards</u> [of care] for air safety," state causes of action
were not eliminated by the statute, and preemption would thus
not allow for full dismissal of state-law claims)(emphasis
added); <u>Martin ex rel. Heckman v. Midwest Exp. Holdings</u>, 555
F.3d 806 (9th Cir. 2009)(Kozinski, C.J.)(employing savings
clause in explanation that "[t]he [Federal Aviation Act] betrays
no . . . intention" to "exclude all state law personal injury
suits from the area of air travel," and thus that it does not
preempt the field of personal injury lawsuits).

     Here, the court's rejection of complete preemption
based on 49 U.S.C. § 46108 and 49 U.S.C. §§ 46101-07 is
similarly bolstered by the "saving clause" of the Federal
Aviation Act.  If § 46108 and §§ 46101-07 completely preempted
state-law claims, converting them into federal claims, then the
Act's remedies would not be "in addition to" state remedies but
would instead replace them.  The parties give no reason for
ignoring the plain meaning of the saving clause.

     Part A contains another section addressing preemption,

36

but it is not relevant to this case.  With some exceptions, 49 U.S.C. § 41713 disallows states and other authorities from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier."  Although § 41713 provides broad defensive preemption for state-law claims, see Smith v. Comair, Inc., 134 F.3d 254 (4th Cir. 1998), "[c]ourts have routinely [held] that preemption under § 41713 does not result in complete preemption," Puterbaugh v. Airtran Airways, 494 F. Supp. 2d 597, 602 (S.D. Ohio 2003).  See also Crown v. PHI Air Med., L.L.C., 2015 U.S. Dist. LEXIS 68113, *5 (E.D. Mich. May 27, 2015)(noting that the "Sixth . . . , the Fifth . . . and the Ninth Circuit[] [courts of appeals] have held that the ADA does not provide for complete preemption of state law claims")(citing Wayne v. DHL Worldwide Express, 294 F.3d 1179 (9th Cir. 2002); Sam L. Majors Jewelers v. ABX, Inc., 117 F.3d 922 (5th Cir. 1997)).

Moreover, Zodiac's briefing declines to rely on § 41713.  Zodiac believes that, because § 41713 was enacted as part of the Airline Deregulation Act, it does not apply to Zodiac's argument in this case, which instead focuses on the Federal Aviation Act.  See Resp. in Opp. to Pl. Mot. to Remand at *13 ("The ADA is a separate statute which, although

37

concerning airlines, does not address preemption under the [Federal Aviation Act]. . . . By contrast, The Federal Aviation Act has no express preemption clause.")(citations and internal quotation marks omitted).  Zodiac also has made no argument that the state laws invoked by the Authority in some way affect "a price, route, or service of an air carrier" in the meaning of the preemption provision.  The court thus finds no reason to believe that § 41713 should alter its view of the complete preemption theory.

   d. <u>Additional Arguments in Zodiac's Briefing</u>

       Zodiac's briefs make several other arguments that merit some discussion.

       First, Zodiac points to two district court opinions finding complete preemption of claims related to aviation safety.  Before confronting these opinions, the court notes that the greater weight of authority appears to have denied that the Federal Aviation Act completely preempts various provisions of state law.  <u>See</u> 15-103 Moore's Federal Practice - Civil § 103.45[2] n49.10 ("Several circuit and district courts have held that the Federal Aviation Act does not completely preempt state law causes of action.")(citing <u>Vorhees v. Naper Aero Club, Inc.</u>,

38

272 F.3d 398, 403 (7th Cir. 2001); In re Air Crash at Lexington,
486 F. Supp. 2d 640, 650-654 (E.D. Ky. 2007); Skydive Factory,
Inc. v. Maine Aviation Corp., 268 F. Supp. 2d 61, 64 (D. Maine
2003); Glorvigen v. Cirrus Design Corp., 2006 U.S. Dist. LEXIS
8741, at *19 (D. Minn. Feb. 16, 2006)).

        Zodiac first discusses the district court decision in
Town of Stratford v. City of Bridgeport, a case in which
defendant Bridgeport, a city that owned an airport situated in
the town of Stratford, bought additional land in Stratford to
build a Runway Safety Area that was mandated by the federal
government.  2010 U.S. Dist. Lexis 65975 at *2.  Stratford sued,
claiming that Connecticut law as well as a contract between the
two municipalities required Bridgeport to gain Stratford's
approval for the project, and that Bridgeport had not done so.
Id. at *4-5.

        The Bridgeport court indeed found that the Connecticut
law, if understood correctly by the plaintiff in that case, was
"pre-empted by the [Federal Aviation Act], thus conveying
federal jurisdiction over this dispute."  Id. at *22.  In doing
so, the court did not describe any specific federal claim that
would replace plaintiff's state-law claim, and the case is thus

39

at odds with the leading explanations of complete preemption given in cases such as Beneficial Nat'l Bank and Taylor.

Even on its own terms, Bridgeport is distinguishable from the case at hand.  The Bridgeport court clarified that "[c]ourts have long distinguished between state laws that directly affect aeronautical safety, on the one hand, and facially neutral laws of general application that have merely an incidental impact on aviation safety."  Id. at *20 (quoting Godspeed Airport, LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n, 681 F.Supp.2d 182, 201-02 (D.Conn. 2010)). The law at issue in Bridgeport applied directly — and only — to airports.  2010 U.S. Dist. Lexis 65975 at *4-5.  It thus differs from the state claims in this case, which are based on "facially neutral" state tort laws "of general application."  Even under the rule used by the Bridgeport court, the claims in this case are thus not completely preempted by federal law.

Zodiac also relies on the opinion in Curtin v. Port Authority of New York, which denied a plaintiff's motion to remand to state court personal-injury tort claims suffered during an airplane evacuation.  183 F.Supp.2d 664 (S.D.N.Y. 2002).  As in Bridgeport, the Curtin court allowed the exercise

40

of federal jurisdiction without saying that a federal cause of action replaced plaintiff's state cause of action.  Id. at 672 (stating that motion to remand is denied); 671 (stating that "the standard of care is a matter of federal, not state, law").

The Curtin case is dissimilar from the present dispute in two ways.  First, it was decided before the Supreme Court's 2003 ruling in Beneficial Nat'l Bank, which did a good deal to clarify that complete preemption requires an exclusive federal cause of action.  Second, the Curtin court noted that the plaintiff's "complaint does not cite any specific statute as a basis for [its] claims."  Id. at 666.  The court thus faced a situation where the legal basis for the plaintiff's complaint was unclear, and it may not have clearly relied on state law alone.  Because plaintiff's complaint in the present case unambiguously relies on state-law claims, federal jurisdiction is not appropriate.

Second, Zodiac cites a great number of authorities asserting that federal aviation laws preempt state laws.  Resp. in Opp. to Pl. Mot. to Remand at *10-12.  Other than Curtin and Bridgeport, however, these authorities do not state that federal aviation law completely preempts state claims, thus allowing for

41

removal of state causes of action to federal court.  Instead, to
the extent they are helpful, they describe the scope of
defensive preemption that federal aviation laws may provide.
See, e.g., Tweed-New Haven Airport v. Town of East Haven, CT,
582 F.Supp.2d 261, 267 (2008)(finding, in action apparently
originating in federal court, that the Federal Aviation Act
impliedly preempts field of aviation safety); Abdullah, 181 F.3d
363 (holding that state-law standards of care, but not state
remedies themselves, are preempted by federal aviation laws); US
Airways, Inc. v. O'Donnell, 627 F.3d 1318 (10th Cir.
2010)(holding, in action originally filed in federal court, that
New Mexico liquor laws are impliedly preempted by federal
regulations of aviation safety, but remanding for balancing of
federal regulations with rights under the Twenty-First
Amendment); Air Transport Ass'n of America, Inc. v. Cuomo, 520
F.3d 218 (2d. Cir 2008)(holding, in action originally filed in
federal court, that New York's Passenger Bill of Rights was
preempted by the Airline Deregulation Act); Br. for United
States as Amicus Curiae at *8, Cleveland v. Piper Aircraft
Corp., 985 F.2d 1438 (10th Cir. 1993)(No. 91-2065)(arguing that
"[t]he federal government has impliedly occupied the field of
ensuring safe aircraft design"); see also Not. of Removal ¶ 15
(stating that "[f]ederal law preempts the entire field of

42

aviation safety," and collecting authorities to support that proposition).  As explained above, defensive preemption, whether of the field or conflict variety, is not the same as complete preemption.

Third, Zodiac's briefing stresses that aviation safety is heavily regulated by the federal government, and that Congress intended to give federal actors "exclusive authority" over aviation safety.  Resp. in Opp. to Pl. Mot. to Remand at *4-6, 9, 11.  In support of this view, Zodiac cites federal statutes, see 49 U.S.C. § 40103(a)(1)(stating that federal government has "exclusive sovereignty of airspace"), as well as court cases and legislative history describing in general terms the federal government's primacy in the field of aviation. Zodiac also describes, in some detail, the federal regulations that applied to the particular construction projects in this case, and claims that the government supervised the project closely and thoroughly.  See Resp. in Opp. to Pl. Mot. to Remand at *4-6.

These arguments, however, fail to show that the doctrine of complete preemption applies to this dispute. Congress may well have desired, as Zodiac contends, that federal

43

rather than state government be the source of certain aviation rules.  If so, the doctrines of field or conflict preemption would allow defendants operating in those federally-regulated areas to raise federal law as a defense in state court. Zodiac's extensive arguments about the federal role in regulating aviation thus do not demonstrate that Congress intended complete preemption, rather than simply defensive preemption, of conflicting state-law claims.  Moreover, Zodiac's discussion of federal supremacy in aviation law fails to demonstrate the "sine qua non" of complete preemption, see Johnson, 781 F.3d at 702, which is, once again, an exclusive federal cause of action covering the type of case at hand.

Last, Zodiac quotes from the case of Peninsula Airport Comm'n v. Nat'l Airlines, Inc., in which the court stated that "[t]he exclusive remedies for violation of provisions of the Federal Aviation Act or breach of the duties imposed by certificates issued thereunder are set forth in 49 U.S.C. § 1487," which was an earlier version of 49 U.S.C. § 46108.  436 F. Supp. 850, 853 (E.D. Va. 1977).  This line from the opinion in Peninsula Airport, however, simply meant that private litigants may only bring suit under one provision of the Federal Aviation Act.  See id. ("The Court may not imply an additional

44

jurisdictional grant in order to entertain this action."). The opinion does not stand for the far more sweeping proposition that federal legislation provides an "exclusive remed[y]" in that it displaces state-law causes of action.

In the end, Zodiac simply has not identified an exclusive federal cause of action that replaces the claims in this case. The court thus will apply the well-pleaded complaint rule and observe that the Authority's claims rely only on state law.

<strong><u>Waiver of Right to Remove or Remand</u></strong>

Each party also contends that the other has made procedural errors that should dispose of this motion. Zodiac claims that the Authority waived its right to remand the case by filing several documents in federal court. The Authority similarly claims that defendants waived their right to remove by litigating in state court before removal.

a. <u>Plaintiffs' Right to Move to Remand</u>

Zodiac contends that "[t]he Authority has waived its right to seek remand by engaging in affirmative activity in

45

federal court before filing this motion." Resp. in Opp. to Pl.
Mot. to Remand at *16. In particular, Zodiac points to the
Authority's "agree[ment] to permit parties to proceed under the
Federal Rules of Civil Procedure, hence in this Court, in a
number of filed stipulations." Id. at 17. Zodiac also notes
that the Authority "sought relief on the merits through Rule
12(b)(6) regarding Triad Engineering, Inc.'s counterclaim, which
the Authority filed in federal court along with its answer and
prayer for attorneys['] fees and costs," and that the Authority
"dismissed one defendant, Great American Insurance Company . . .
and engaged in ongoing discovery activity through site sampling
and testing." Id.

    The rule on which Zodiac relies, which imputes waiver
of the right to remand to a plaintiff who has litigated in
federal court, is not established in our circuit. Zodiac points
to two district courts in the Fourth Circuit that have adopted
the rule. See Moffit v. Baltimore Am. Mortgage, 665 F. Supp. 2d
515, 517 (D. Md. 2009) aff'd sub nom. Moffitt v. Residential
Funding Co., LLC, 604 F.3d 156 (4th Cir. 2010)(district court
holding that a "party that engages in affirmative activity in
federal court typically waives the right to seek a
remand")(quoting Koehnen v. Herald Fire Ins. Co., 89 F.3d 525,

528 (8th Cir.1996)); <u>Tucker v. Thomas</u>, No. 5:10-cv-31, 2011 WL
1119661, at *5 (N.D.W. Va. Mar. 24, 2011)(citing <u>Moffit</u> and
<u>Koehnen</u>).[6]

         Those opinions appear, however, to be based on out-of-
circuit authority, and our court of appeals has endorsed no such
rule explicitly.  To the contrary, precedent from the Fourth
Circuit suggests that a timely-filed motion to remand "renders
the waiver doctrine inapplicable."  <u>King v. Marriott Int'l Inc.</u>,
337 F.3d 421, 425-26 (4th Cir. 2003).  In <u>King</u>, defendants
argued that plaintiff "waived her objection to removal by
amending her complaint" after the case had been removed to
federal court.  <u>Id.</u> at 425.  The Fourth Circuit observed the
Supreme Court's statement in <u>Caterpillar, Inc. v. Lewis</u> that
"the plaintiff 'by timely moving for remand, did all that was

---

[6] The Fourth Circuit affirmed the <u>Moffit</u> decision under the name
of <u>Moffitt v. Residential Funding Co., LLC,</u> 604 F.3d 156 (4th
Cir. 2010), but, in doing so, it did not state, as the district
court did, that a party who takes "affirmative activity in
federal court typically waives the right to seek a remand,"
<u>Moffit v. Baltimore Am. Mortgage</u>, 665 F. Supp. 2d at 517.
Instead, the Fourth Circuit noted that plaintiffs had amended
their complaints after they appeared in federal court, and the
amended complaints "alleged facts that clearly give rise to
federal jurisdiction."  <u>Moffitt</u>, 604 F.3d at 159-60 (internal
quotation marks and citation omitted).  The court's decision
thus relied on a finding that the new complaint alleged facts
triggering federal jurisdiction, and did not turn on whether
plaintiffs had waived the right to remand.  <u>See id.</u>

required to preserve his objection to removal.'" <u>King</u>, 337 F.3d
at 426 (quoting <u>Caterpillar</u>, 519 U.S. 61, 74 (1996)).  The
Fourth Circuit thus concluded that "a plaintiff's claim that the
removal of his case was improper under 28 U.S.C. § 1441 is
preserved when the plaintiff timely moves for remand." <u>King</u>,
337 F.3d at 426.

        The court in <u>King</u> also noted particularities of the
complete preemption context that would counsel against finding a
waiver of the right to protest removal in the present case.
When cases are removed for reasons other than complete
preemption, "considerations of finality, efficiency, and
economy" may be highly relevant.  <u>King</u>, 337 F.3d at 426 (quoting
<u>Caterpillar</u>, 519 U.S. at 75).  In a complete preemption case,
however, these considerations must generally be set aside
because of the dramatic legal effects of allowing removal:

> An erroneous determination by the district court that
> a particular claim is completely preempted
> significantly shifts the nature of the law that would
> be applied to the claim. The state claim wrongfully
> determined to be completely preempted would be
> analyzed as a federal claim under federal law. Upon a
> remand to a state court, however, the state claim
> would be analyzed under the appropriate state law,
> which law may contain rules of decision substantially
> different from the rules contained in federal law.
> Wrongful removal here would thus destroy [the
> plaintiff's] legitimate state claim, rather than (as

> in the case of a wrongfully-removed diversity action)
> simply change the identity of the deciding court.

King, 337 F.3d at 426 (internal citation omitted).  So too, in this case, would a finding of waiver possibly "destroy [a] legitimate state claim."

The court also notes that plaintiff objects to removal of this case because of a lack of subject-matter jurisdiction. Even if the court were to endorse a rule such as that of the district court in Moffit, it would mean only that plaintiff could waive its procedural objections to the defense's removal. A lack of subject-matter jurisdiction, by contrast, may always be raised by the parties, or even by the court on its own initiative.  The court may not waive this analysis, nor allow the parties to agree to waive it.  See Capron v. Van Noorden, 6 U.S. 126, 127 (1804).

b. Defendants' Right to Remove

The Authority also suggests that some defendants waived their right to agree to remove the case by litigating in state court before removal.  The Authority notes that multiple defendants filed counterclaims and cross-claims, that another filed an offer of judgment, and that another filed "a motion to

49

dismiss seeking dismissal with prejudice of Plaintiff's claims in their entirety based on preemption."  Pl. Mem. in Supp. of Mot. to Remand at *16-17.

Under 28 U.S.C. § 1446(b)(2)(A), "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."  It has traditionally been the rule that one defendant may block another's attempt to remove either by refusing to consent, or by waiving its right to consent to removal.  "[T]he values of judicial economy, fairness, convenience and comity . . . . may justify the application of the common law doctrine of waiver."  Grubb v. Donegal Mut. Ins. Co., 935 F.2d 57, 59 (4th Cir. 1991)(quoting Rothner v. City of Chicago, 879 F.2d 1402, 1416 (7th Cir. 1989)).

In some cases, defendants waive the right to remove by beginning to litigate a case in state court.  "[A]lthough a defendant may yet waive its 30-day right to removal by demonstrating a 'clear and unequivocal' intent to remain in state court, such a waiver should only be found in 'extreme situations.'"  Grubb, 935 F.2d 57, 59 (quoting Rothner, 879 F.2d

50

at 1416).  In <u>Aqualon Co. v. Mac Equipment, Inc.</u>, the Fourth Circuit discussed two district court cases in which waiver was found where "defendants moved to remove to federal court after they filed permissive substantive defenses in state court."  149 F.3d 262, 264 (4th Cir. 1998)(emphasis omitted), <u>abrogated in part</u> by <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567, 572 (2004).[7]  In one of the cases, <u>Baldwin v. Perdue, Inc.</u>, 451 F.Supp. 373 (E.D.Va. 1978), defendants filed a cross-claim in state court before removal, and in the other, <u>Sood v. Advanced Computer Techniques Corp.</u>, 308 F.Supp. 239 (E.D.Va. 1969), defendants filed a permissive counterclaim.  The <u>Aqualon</u> court, speaking of the motions filed in <u>Baldwin</u> and <u>Sood</u>, wrote that "[a] defendant may waive the right to remove by taking some such substantial defensive action in the state court before petitioning for removal."  149 F.3d at 264 (emphasis omitted).

---

[7] In <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, the Supreme Court held that "a party's post-filing change in citizenship [cannot] cure a lack of subject-matter jurisdiction that existed at the time of filing in an action premised upon diversity of citizenship." 541 U.S. 567, 572 (2004).  The <u>Aqualon</u> opinion, on the other hand, had stated that "once an improperly removed case has proceeded to final judgment in federal court that judgment should not be disturbed so long as the federal court had jurisdiction over the claim at the time it rendered its decision." <u>Aqualon</u>, 149 F.3d at 264.  The rejection of this portion of the Fourth Circuit's decision, however, does not appear to have any impact on its discussion of the waiver doctrine.

51

In the present case, defendants West Virginia Paving
and Triad Engineering both filed cross-claims, and Triad also
filed a counterclaim, before Zodiac filed its notice of removal.
Triad filed its cross-claims and counterclaims on July 30, and
Zodiac removed the case on August 5, only four business days
later.  See Not. of Removal Ex. 6 (state docket sheet reflecting
that "CC & CR CL of Triad Engineering" was received on July 30,
2015); Not. of Removal Ex. 4 at *68 (counterclaim and cross-
claims of Triad Engineering, with stamp indicating receipt on
July 30, 2015); see also Not. of Removal at *11 (stating that
removal notice was filed on August 5, 2015).  Under the holdings
of Baldwin and Sood, which found cross-claims and counterclaims
to constitute waiver, and the Fourth Circuit's apparent
endorsement of the Baldwin and Sood opinions in Aqualon,
defendants in this case would likely have waived their rights to
join in the removal of the case to federal court.[8]

Zodiac contends, however, that a 2012 amendment to 28
U.S.C. § 1446 should change the outcome of this matter.  Before

_____

[8] The Sood court applied the waiver doctrine only for a
permissive counterclaim.  Sood, 308 F. Supp. at 242.  The court
need not determine whether the counterclaim in this case was
permissive or compulsory, however, because defendants also filed
cross-claims, which are, under West Virginia law, "always
permissive."  See Westwood v. Fronk, 177 F. Supp. 2d 536, 541
(N.D.W. Va. 2001)(citations omitted).

2012, § 1446 simply stated the following in relation to the
timing of removal:

> The notice of removal of a civil action or proceeding
> shall be filed within thirty days after the receipt by
> the defendant, through service or otherwise, of a copy
> of the initial pleading setting forth the claim for
> relief upon which such action or proceeding is based,
> or within thirty days after the service of summons
> upon the defendant if such initial pleading has then
> been filed in court and is not required to be served
> on the defendant, whichever period is shorter.

28 U.S.C.A. § 1446 (2011).  This provision led to disagreement
among courts regarding the "later-served defendant" problem:
when one defendant was served after the others, how long did the
later-served defendant have to remove the case?  In the Federal
Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L.
No. 112-63, 125 Stat. 758, Congress amended § 1446(b)(2) to make
explicit the procedure for later-served defendants:

> (2)(A) When a civil action is removed solely under
> section 1441(a), all defendants who have been properly
> joined and served must join in or consent to the
> removal of the action.
>
> (B) Each defendant shall have 30 days after receipt by
> or service on that defendant of the initial pleading
> or summons described in paragraph (1) to file the
> notice of removal.
>
> (C) If defendants are served at different times, and a
> later-served defendant files a notice of removal, any
> earlier-served defendant may consent to the removal

53

> even though that earlier-served defendant did not
> previously initiate or consent to removal.

28 U.S.C. § 1446(b)(2).  The new text clarifies that "[e]ach defendant shall have 30 days" to file a notice of removal, but that, "[i]f defendants are served at different times," the earlier-served defendants "may consent" to a notice of removal filed by the later-served defendant, "even though that earlier-served defendant did not previously initiate or consent to removal."  Id.

        Zodiac contends that "[t]he Authority's argument that certain co-defendants waived their right to give consent to removal by filing pleadings in state court is necessarily contradicted by this statute."  Resp. in Opp. to Pl. Mot. to Remand at *18-19.  In Zodiac's view, the earlier-served defendants in this case – Triad Engineering and West Virginia Paving – must be allowed to consent to later-served Zodiac's notice of removal, because, under the revised statute, "any earlier-served defendant may consent to the removal."  Id. at 18-19 (quoting § 1446(b)(2)(C)).  Zodiac points to the case of Rolfe v. Biomet, Inc., in which a district court suggested that an earlier-served defendant could not waive its right under the revised statute to join in the removal of a later-served

54

defendant.  No. 4:14-00738 AGF, 2014 WL 3420814 (E.D. Mo. July
14, 2014) on reconsideration, No. 4:14-00738 AGF, 2014 WL
4261635 (E.D. Mo. Aug. 29, 2014)("The Court rejects Plaintiffs'
contention that the Biomet Defendants 'waived' their right of
removal when Kindred filed an answer in state court.").  The
issue has received sparse and contradictory analysis so far, all
of which has come from district courts.  See, e.g., Propane Res.
Supply & Mktg., L.L.C. v. G.J. Creel & Sons, Inc., No. 12-2758-
JTM, 2013 WL 1446784, at *1 (D. Kan. Apr. 9, 2013) (noting that
the amended text only "addresses the issues of the timeliness of
removal and the rule of unanimity," and that it "simply does not
address the separate issue of waiver of removal"); RCM Int'l,
LLC v. Alpental Energy Partners, LLC, 2014 U.S. Dist. LEXIS
168389, *9 (N.D. Cal. Dec. 4, 2014)(noting, in passing, that "it
is not clear whether the adoption of the later-served rule is
compatible with a conception of waiver").

        At least one commentator has agreed with Zodiac's
position.  In discussing the Federal Courts Jurisdiction and
Venue Clarification Act, Paul E. Lund parsed the issue of an
earlier-served defendant's waiver of the right to remove as
follows:

Can a concept of waiver coexist with the last-served
defendant rule?  To some extent, the notion that the
actions of some defendants may amount to a waiver of
the rule seems inconsistent with the whole idea behind
the last-served rule.  The last-served rule is
premised on the rationale that later-served defendants
should have the opportunity to persuade their co-
defendants that removal is the proper course.  No
distinction is made [in the legislation] as to whether
the earlier-served defendants' failure to remove was
inadvertent or deliberate.  The new text, which
specifies that the "earlier-served defendant may
consent to the removal even though that earlier-served
defendant did not initiate or consent to removal,"
also makes no distinction as to the reason for the
earlier failure to act.  The courts ultimately may
reach a consensus that the waiver doctrine does not
fit at all with the last-served rule, or that it has
limited application under that rule, but the courts
likely will be called upon to address that issue in
the foreseeable future.

Paul E. Lund, <u>The Timeliness of Removal and Multiple-Defendant</u>

<u>Lawsuits</u>, 64 Baylor L. Rev. 50, 108-09 (2012).  Lund's argument

focuses on two points.  First, the amended statute draws no

distinctions among different means by which earlier-served

defendants manifest their intentions not to remove.  It simply

says that "any earlier-served defendant may consent to the

[later defendant's] removal even though that earlier-served

defendant did not previously initiate or consent to removal."

28 U.S.C. § 1446(b)(2)(C).  The text contains no hint that a

particular means of showing a lack of consent to removal – such

as litigating in state court – falls outside the new provision,

while others – such as inaction – fall within it.  Although

plaintiff disagrees with this reading, suggesting instead that the statute addresses only those earlier-served defendants whose consent to removal would be time-barred, such a position finds no support in the text.

Second, Lund argues that the later-served rule "is premised on the rationale that later-served defendants should have the opportunity to persuade their co-defendants that removal is the proper course." The legislative history of the Act indeed cites with approval cases that rely on this argument. See, e.g., Marano Enterprises v. Z-Teca Restaurants, L.P., 254 F.3d 753, 755 (8th Cir. 2001)("Later-served defendants would not be afforded the opportunity to attempt to persuade their co-defendants to join a notice of removal if more than thirty days had passed since the first defendant was served.")(cited in H.R. Rep. 112-10 at *14 (2011)). And allowing earlier defendants to block a later-served defendant's removal plainly forecloses the later-served party's ability to persuade them to remove.

Similarly, Congress explicitly stated its intention that each defendant have its own opportunity to initiate removal. The House Judiciary Committee's Report states that, in order to make the later-served defendant's removal right

57

effective, it is necessary to "allow earlier-served defendants
to join in or consent to removal by a later-served defendant."
H.R. Rep. 112-10 at *14.  As the Committee Report explains,
"[f]airness to later-served defendants . . . necessitates that
they be given their own opportunity to remove, even if the
earlier-served defendants chose not to remove initially."  Id.
If earlier-served defendants could, by waiver, foreclose a
later-served defendant's chance to remove, then the later-served
defendants will not ever receive "their own opportunity to
remove."  See also 157 Cong. Rec. H1367-01 (Feb. 28,
2011)(statement of Lamar Smith, bill sponsor, that the bill
"Clarifies the provisions governing timeliness of removal by
giving each defendant 30 days after service to file a notice of
removal, while allowing any earlier-served defendants to consent
to the removal by the later-served defendant") (emphasis added).

        In one important way, the waiver doctrine may remain
operative after the 2011 Act.  If the last-served defendant
itself took substantial action in state court, then it may be
that its own right to remove could still be waived.  Such a
situation would not implicate the rule enacted by Congress,
because the later-served defendant's rights would be diminished
by its own act, not by the actions of an earlier-served party.

But that issue is not presented in this case, as Zodiac filed no materials suggesting an intent to remain in state court.

Because the amended § 1446(b)(2) allows later-served defendants to remove, and because Congress plainly intended for each defendant to have its own right to initiate removal, the court finds that Zodiac's right to remove was not foreclosed by earlier-served defendants' litigation in state court.  This determination will not, of course, allow the court to retain jurisdiction over this matter given its finding that it lacks subject-matter jurisdiction.

V.

Based upon the foregoing, the court concludes that it lacks subject-matter jurisdiction.  The court, accordingly, ORDERS that plaintiff's motion to remand be, and it hereby is, granted.  The court further ORDERS that this action be, and it hereby is, remanded for all further proceedings to the Circuit Court of Kanawha County.

59

The Clerk is directed to forward a copy of this written opinion and order to counsel of record and any unrepresented parties and a certified copy to the clerk of court for the Circuit Court of Kanawha County.

ENTER: February 18, 2016

John T. Copenhaver, Jr.
United States District Judge